# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GINGER F. COOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-027-RAW-KEW |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Ginger F. Cook (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 8, 1970 and was 44 years old at the time of the ALJ's latest decision. Claimant completed his high school education and some college. Claimant has worked in the past as a certified nurse's aide, a technician in a catheter lab, and in tech support/dispatch agent. Claimant alleges an inability to work beginning January 16, 2010 due to limitations resulting from

3

constant leg pain and anxiety.

**Procedural History**

On October 27, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On March 8, 2012, Claimant filed an application for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*). Claimant's applications were denied initially and upon reconsideration. After an administrative hearing, an Administrative Law Judge ("ALJ") entered an unfavorable decision which the Appeals Council reversed and remanded for further consideration.

On June 16, 2014, ALJ Bernard Porter conducted a further administrative hearing by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in McAlester, Oklahoma. On June 25, 2014, the ALJ entered a second unfavorable decision. The Appeals Council denied review of the ALJ's decision on December 3, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe

impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to find that Claimant's impairments met or equaled a listing; (2) reaching an improper and unsupported RFC; and (3) finding Claimant could perform jobs identified at step five.

**Consideration of a Listing**

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, left ankle fracture requiring corrective surgery, hypertension, migraine headaches, degenerative joint disease in the right knee, gastroesophageal reflux disease ("GERD"), bipolar disorder, anxiety disorder with panic disorder, and borderline personality disorder. (Tr. 19). He also found Claimant retained the RFC to perform sedentary work, concluding she could lift, carry, push, and pull a ten pounds occasionally and five pounds frequently[2], she could stand/walk for two hours in an eight hour workday, and sit for six hours in an eight hour workday. Claimant could occasionally use foot controls, occasionally climb

---

[2] The decision actually states Claimant can lift both ten pounds and five pounds frequently in different areas of the RFC assessment. For purposes of this appeal, this Court will presume the more restrictive level of lifting.

5

ramps and stairs but never climb ropes, scaffolds, and ladders or crawl. Claimant could frequently balance, stoop, and crouch and occasionally kneel. She must avoid exposure to unprotected heights, moving mechanical parts, and temperature extremes. Claimant required a sit/stand option that allows for a change in position at least every 30 minutes for no more than three to four minutes at a time. Due to psychologically based factors, Claimant could perform simple tasks and make simple work-related decisions. She could have no more than occasional interaction with co-workers and supervisors, and no interaction with the public. Due to episodic symptomatology, Claimant might be off task up to five percent of the workday. (Tr. 24-25).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of document preparer, clerical mailer, and touch up screener, all of which the ALJ determined existed in sufficient numbers in the state and national economies. (Tr. 38). As a result, the ALJ determined Claimant was not disabled from December 24, 2005 through the date of the decision. Id.

Claimant contends that ALJ erred in concluding that her impairments did not meet or equal a listing. Specifically, Claimant asserts her severe ankle fracture and subsequent fusion

meets Listing 1.02. This Listing provides

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.
>
> 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Listing 1.00B2b defines the "inability to ambulate effectively." Id. In relevant part, Listing 1.00B2b provides:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or

7

> school. Therefore, examples of ineffective ambulation
> include, but are not limited to, the inability to walk
> without the use of a walker, two crutches or two canes,
> the inability to walk a block at a reasonable pace on
> rough or uneven surfaces, the inability to use standard
> public transportation, the inability to carry out routine
> ambulatory activities, such as shopping and banking, and
> the inability to climb a few steps at a reasonable pace
> with the use of a single hand rail. . . .

Id. at Listing 1.00B2b(1)-(2).

At step three, Claimant bears the burden of demonstrating that her condition meets or equals all of the specified criteria of the particular listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Claimant contends the ALJ "did a very inadequate job of assessing" her ankle condition before concluding Claimant did not meet this Listing.

The ALJ's consideration is rather brief. He states, "Regarding the claimant's right knee and status post left fractured ankle, under the relevant Listing 1.02(A), *Major dysfunction of a joint*, the claimant does not have involvement resulting in inability to ambulate effectively." (Tr. 22).

The record calls into question precisely what the ALJ relied upon to arrive at this conclusion. Claimant used a single cane in June of 2011. (Tr. 883-84). A rolling walker with left forearm platform was used by Claimant immediately after her ankle surgery in December of 2005. (Tr. 542). An acknowledgment that Claimant had to use crutches or a cane to walk appears in the record in July

8

of 2010. (Tr. 848). Moreover, Dr. Beau Jennings completed a medical source statement on March 14, 2014 which found Claimant could not perform activities like shopping, could not travel without a companion for assistance, could not ambulate without using a wheelchair, walker or two canes or two crutches, could not walk a block at a reasonable pace on rough or uneven surfaces, could not use standard public transportation, and could not climb a few steps at a reasonable pace with the use of a single hand rail. (Tr. 944).[3] Claimant testified concerning the extent of her activities of daily living but, as noted, walking independently about one's home without an assistive device does not constitute effective ambulation. *Listing 1.00B2b(2)*.

In short, the ALJ must provide more information than the single conclusory statement regarding Claimant's ambulation to ascertain whether he appropriately considered Claimant's qualification for a listing at step three. On remand, the ALJ shall explain his conclusion with references to the evidence in the record in light of Listing 1.00B2b(1) and (2).

## RFC Determination

In contending the ALJ arrived at an erroneous RFC, she first asserts that he failed to properly evaluate the opinion evidence in

---

[3] While the ALJ gave Dr. Jennings' opinion "little weight", this Court will discuss the lack of support for the discounting of this professional's opinion *infra*.

this case. Carol Weddle, a certified nurse practitioner, completed an RFC evaluation form on Claimant dated April 30, 2012. She concluded Claimant could sit at one time for one to two hours and five to six hours in an eight hour workday; stand for 15-20 minutes at a time and for 45 minutes during an eight hour workday; and walk for 15-20 minutes at a time and for 35-45 minutes over an entire eight hour workday. She opined that Claimant would need an assistive device to stand, walk, and balance and would need to take breaks at hourly intervals. Claimant would need to alternate between sitting and standing at 15 minute intervals or less. She could continuously lift and carry up to five pounds, frequently lift carry up to ten pounds, and occasionally lift up to 25 pounds.

Claimant's lower left extremity was limited which required that it be elevated when Claimant is seated. She could occasionally push/pull, work in an extended position, and reach. She could also frequently grasp and finger. Claimant could occasionally bend and stoop, rarely crouch, kneel and balance but never squat or crawl. (Tr. 916-17). Claimant could rarely climb stairs but never climb ladders, ramps, or scaffolds. She should completely avoid unprotected heights and dangerous moving machinery. Ms. Weddle noted that Claimant's surgery on her left ankle had resulted in marked decrease in range of motion and the ability to do weight bearing, balancing activities. She found that

10

the current fracture had compounded the problem. (Tr. 918).

The ALJ afforded Ms. Weddle's opinion "diminished weight", finding it was not fully supported by or consistent with the medical record as a whole. The ALJ then proceeded through a series of criticisms of Claimant's actions.

"[T]he fact that a medical source relies on a plaintiff's subjective reports of her symptoms provides no basis for discrediting a medical opinion." Gonzales v. Colvin, 69 F. Supp. 3d 1163, 1170-71 (D. Colo. 2014) citing Nieto v. Heckler, 750 F.2d 59, 60-61 (10th Cir. 1984); Gutierrez v. Astrue, 2008 WL 5246300, at 4 (D.Colo. Dec. 15, 2008). "The ALJ's own disbelief of plaintiff's subjective complaints provides no basis on which to discredit an otherwise valid medical source opinion, since the ALJ may not substitute his lay opinion on the effect of medical findings for that of a medical professional." Id. citing Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004); McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)("[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.").

The fact remains that the ALJ must evaluate every medical opinion in the record, and he will consider several factors in

deciding the weight that should be given to any medical opinion. Salazar v. Barnhart, 468 F.3d 615, 625-626 (10th Cir. 2006)(citing 20 C.F.R. § 416.927(d)). In evaluating medical opinions, the ALJ must accord each opinion the proper weight on the basis of: (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist. Id. at 626. *See also* Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ must give good reasons for the weight assigned to a medical opinion and set forth specific, legitimate reasons for rejecting an opinion of an acceptable treating source. Watkins, 350 F.3d at 1300-1301.

The ALJ failed to provide specific and legitimate reasons for rejecting Ms. Weddle's opinion. On remand, he shall cite to specific contradictions in the record and account for any reduction in the weight to which the opinion is entitled.

The ALJ also sent Claimant to Dr. Beau Jennings for a consultative examination. He authored a medical source statement dated March 14, 2014. Dr. Jennings concluded Claimant could frequently lift/carry up to ten pounds and occasionally lift/carry

12

up to 25 pounds. (Tr. 939). Claimant could sit for one hour at a time and six hours during an eight hour workday, stand for five minutes at a time and for one hour during an eight hour workday, and walk for five minutes at time and for thirty minutes over an eight hour workday. She required a cane to ambulate and could never use her left foot to operate foot controls. (Tr. 940-41). Claimant could also never climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (Tr. 942). Claimant could not be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, extreme cold or heat, or vibrations. (Tr. 943). As previously related, Dr. Jennings also found Claimant could not perform activities like shopping, could not travel without a companion for assistance, could not ambulate without using a wheelchair, walker or two canes or two crutches, could not walk a block at a reasonable pace on rough or uneven surfaces, could not use standard public transportation, and could not climb a few steps at a reasonable pace with the use of a single hand rail. (Tr. 944). These limitations were estimated to last for 12 consecutive months. Id.

The ALJ gave Dr. Jennings' opinion "little weight" as not fully supported by or consistent with the medical record as a whole. (Tr. 32). The record indicates Claimant cannot put her left foot flat on the floor, was very unstable without an assistive

13

device and had only mild improvement with stability of a hand held cane. (Tr. 882-84). The ALJ also relied upon physical observations by Claimant mental health examiner in order to reject Dr. Jennings physical assessment - a mental health professional whose opinion he later gave "little weight". (Tr. 32-33). On remand, the ALJ shall reassess Dr. Jennings' evaluation and, if necessary, re-contact him with any questions regarding the use of assistive devices.

Claimant also asserts the ALJ erroneously rejected the mental health opinion of Dr. Robert Spray. Dr. Spray evaluated Claimant on March 10, 2014. He diagnosed her with bipolar disorder, NOS, panic disorder without agoraphobia, history of polysubstance abuse in sustained remission, and borderline personality disorder with dependent traits. He estimated Claimant's GAF at 40-45. (Tr. 952). Dr. Spray found Claimant was anxious around crowds, communicates adequately, had cognitive function within normal limits, had adequate attention and concentration, and would have difficulty persisting work-like tasks during episodes of panic and/or interpersonal distress. Claimant's mood swings could interfere with her ability to persist with tasks. Claimant also may have difficulty completing work-like tasks in a timely manner. Dr. Spray found no indication of malingering or exaggeration. He also found Claimant could not manage her funds without assistance.

(Tr. 953).

Dr. Spray also evaluated Claimant on June 24, 2014. He administered the Wechsler Adult Intelligence Scale – IV and concluded Claimant had a full scale IQ of 82. Her verbal reasoning skills were in the low average range, her non-verbal reasoning was below average, her working memory, including arithmetic skills were in the average range, and her processing speed was in the low average range. (Tr. 968).

Dr. Spray also completed a medical source statement. He found Claimant was severely limited in demonstrating reliability, maintaining regular attendance, and completing a normal workday or workweek. She was markedly limited in relating to co-workers, interacting with supervisors, dealing with work stress, making simple work-related decisions, understanding and remembering detailed or complex instructions, carrying out detailed or complex instructions, setting realistic goals and/or making plans independently of others, being punctual within customary tolerances, sustaining an ordinary routine without special supervision, performing at a consistent pace without an unreasonable number or length of rest periods, responding and adjusting to the use of new and unfamiliar tools and/or machines, adjusting to the introduction of new and unfamiliar personnel, either among co-workers or supervisors, behaving in an emotionally

15

stable manner, interacting with the general public, asking simple questions and requesting assistance, accepting instructions and appropriately responding to criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and working in coordination or proximity to others without being distracted by them. (Tr. 969-71).

The ALJ gave Dr. Spray's opinions "little weight". He found the record did not indicate Claimant was late for work or had problems with persistence so he discounted Dr. Spray's opinion on this issue. He also discounted Dr. Spray's finding that Claimant could not complete a workday or workweek by stating she "was doing well on medication." (Tr. 34). The ALJ's citation to evidence only remotely related to the issue found by Dr. Spray does not adequately discount or reduce the weight of the opinion he offered. He also only challenges a very few of the many findings of limitation determined by Dr. Spray with questionably relevant evidence. On remand, the ALJ shall re-evaluate Dr. Spray's opinion and obtain further testing if he finds inadequate support for his positions.

Claimant challenges both the RFC assessment and the questioning of the vocational expert based upon a re-evaluation of the medical professionals' opinions. On remand, the ALJ shall

16

reassess both the RFC and the hypothetical questioning of the vocational expert for needed modification.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE